UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
DONALD WAGNER,

                                       Plaintiff,

Case No.: 12 Civ. 03004 (ER)
ECF Case

                                    -against-

CONDORS SWIM CLUB OF CLARKSON INC.,
ROBERT CARLUCCI AND JAMES PATRICK
CARLUCCI,

                                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' APPLICATION FOR A RESTRAINING ORDER
AND FOR PRELIMINARY INJUNCTION**

                                                                   **SAPIR & FRUMKIN LLP**
                                                                   Attorneys for Plaintiff Donald Wagner
                                                                   399 Knollwood Road, Suite 310
                                                                   White Plains, New York 10603
                                                                   (914) 328-0366

On the Brief:

    Donald L. Sapir, Esq.
    Howard Schragin, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      POINT I. STANDARD FOR GRANT OF TEMPORARY RESTRAINING UNDER
      NEW YORK LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      POINT II. THE PRELIMINARY INJUNCTION MUST BE DENIED BECAUSE
      DEFENDANTS HAVE NOT DEMONSTRATED THAT THEY SUFFERED
      IRREPARABLE HARM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT III. DEFENDANTS CANNOT DEMONSTRATE THAT THEY ARE
      LIKELY TO SUCCEED ON THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.      The Public Interest Weighs Heavily Against Granting Preliminary Injunctive
             Relief and Enjoining Wagner from Coaching Another Swim Club . . . . . . . . . . . 5

      B.      The Restrictive Covenant That Defendants Seek to Enforce Is Unreasonable
             as a Matter of Law Because it Is Greater than Needed to Protect the Condors
             Club's Legitimate Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.      The Condors Club Cannot Enforce the Restrictive Covenants in the
             Employment Agreement Against Wagner Because it Materially Breached the
             Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      D.      The Condors Club Cannot Enforce the Restrictive Covenant Against Wagner
             Because it Terminated His Employment Without Cause . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

*Advanced Digital Sec. Solutions, Inc. v. Samsung Techwin Co.*, 53 A.D.3d 612
(2d Dep't 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*American Broadcasting Cos. v. Wolf*, 52 N.Y.2d 394 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*BDO Seidman v Hirshberg*, 93 N.Y.2d 382 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell & Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 3

*Charette v. Town of Oyster Bay*, 159 F.3d 749 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496 (1977) . . . . . . . . . . . . . . 5

*Cornell v. T.V. Dev. Corp.*, 17 N.Y.2d 69 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*DeCapua v Dine-a-Mate*, 292 A.D.2d 489 (4th Dept 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Elite Promotional Mktg., Inc. v. Stumacher*, 8 A.D.3d 525 (2d Dep't 2004) . . . . . . . . . . . . . . . 9

*FXDirectDealer, LLC v. Abadi*, 2012 U.S. Dist. LEXIS 49588 (S.D.N.Y. Apr. 5, 2012) . . . . . . 2

*Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Hope Foundation, Inc. v. Edwards*, 2006 U.S. Dist. LEXIS 84244 (S.D. Ind. Apr. 12, 2006) . . . 6

*Int'l Creative Mgmt., Inc. v. Abate*, No. 07 Civ. 1979, 2007 U.S. Dist. LEXIS 22964
(S.D.N.Y. Mar. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Khan v State Univ. of New York Health Sc. Ctr. at Brooklyn*, 271 A.D.2d 656

(2d Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Med. Soc'y of State of N.Y. v. Toia*, 560 F.2d 535 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . 1

*Merrill Lynch Realty Assocs., Inc. v. Burr*, 140 A.D.2d 589 (2d Dep't 1988) . . . . . . . . . . . . . . 2

*Michael I. Weintraub, M.D., P.C. v. Schwartz*, 131 A.D.2d 663 (2d Dep't 1987) . . . . . . . . . . 10

*Milbrandt & Co. v. Griffin*, 1 A.D.3d 327, 328 (2d Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Morris v. Schroder Capital Mgmt. Int'l*, 7 N.Y.3d 616 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*NYSARC, Inc. v. Syed*, 192 Misc.2d 772 (Sup. Ct. Chautauqua County 2002) . . . . . . . . . . . . . . . . 7

*Payment Alliance Int'l, Inc. v. Ferrreira*, 530 F. Supp. 2d 477 (S.D.N.Y. 2007) . . . . . . . . . . . . . 3

*Post v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84 (1979) . . . . . . . . . . . . . . . 5, 11

*Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rex Medical v. Angiotech Pharmaceuticals, Inc.*, 754 F. Supp. 2d 616 (S.D.N.Y., 2010) . . . . . . 2

*SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*, 867 F. Supp. 155
(S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

*USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiff Donald Wagner ("Plaintiff" or "Wagner") submits this memorandum of law in opposition to Defendants Condors Swim Club of Clarkstown, Inc. ("Condors Swim Club"), Robert Carlucci ("Bob Carlucci") and Joseph P. Carlucci (sued herein as James Patrick Carlucci) ("J.P. Carlucci") (collectively, "Defendants") application for a temporary restraining order and for preliminary injunction.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Affidavit of Donald Wagner ("Wagner Aff."), sworn to on April 24, 2012, for a complete recitation of the relevant facts. Of note to this particular application, Defendants seek to enforce a restrictive covenant contained in Wagner's Employment Agreement preventing him from coaching swimming for (2) years and within a fifty (50) mile radius of the Condors' Club's principal office within the geographic borders of Rockland, Orange, Bronx, Queens, New York, Brooklyn, Nassau, Putnam and Westchester Counties in New York and Bergen County in New Jersey.

## ARGUMENT

### POINT I. STANDARD FOR GRANT OF TEMPORARY RESTRAINING UNDER NEW YORK LAW

A preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." *Med. Soc'y of State of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977); *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); <u>accord</u>, *Int'l Creative Mgmt., Inc. v. Abate*, No. 07 Civ. 1979, 2007 U.S. Dist. LEXIS 22964 (S.D.N.Y. Mar. 28, 2007). A preliminary injunction is appropriate upon a showing of the moving party's likelihood of success on the merits and where the moving party has shown that: (1) it is likely to suffer irreparable injury in the absence of an

1

injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships tips in its favor; and (4) the public interest would not be dis-served, by the issuance of a preliminary injunction. *Rex Medical v. Angiotech Pharmaceuticals, Inc.*, 754 F. Supp. 2d 616, 620 (S.D.N.Y., 2010); *FXDirectDealer, LLC v. Abadi*, 2012 U.S. Dist. LEXIS 49588 (S.D.N.Y. Apr. 5, 2012).

A party is not entitled to a preliminary injunction unless it is plain from the undisputed facts that an injunction is justified; where the facts are in sharp dispute, an injunction should not be granted. *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (motion for preliminary injunction "should not be resolved on the basis of affidavits which evince disputed issues of fact."); *Merrill Lynch Realty Assocs., Inc. v. Burr*, 140 A.D.2d 589, 593 (2d Dep't 1988) ("Where the facts, as in the case at bar, are in sharp dispute, a temporary injunction should not be granted."); *Advanced Digital Sec. Solutions, Inc. v. Samsung Techwin Co.*, 53 A.D.3d 612, 613 (2d Dep't 2008). The motion should not be granted where there are issues that "subvert the plaintiff's likelihood of success on the merits . . . to such a degree that it cannot be said that the plaintiff established a clear right to relief." *Advanced Digital Sec. Solutions*, 53 A.D.3d at 613 (*citing, Milbrandt & Co. v. Griffin*, 1 A.D.3d 327, 328 (2d Dep't 2003)); *County of Westchester v. United Water New Rochelle*, 32 A.D.3d 979, 980 (2d Dep't 2006) (when central facts are in dispute, it is more difficult to ascertain whether the movant has shown a likelihood of success on the merits). Defendants have failed to establish the necessary elements to support their request for preliminary injunctive relief and the application should be denied.

**POINT II.   THE PRELIMINARY INJUNCTION MUST BE DENIED BECAUSE DEFENDANTS HAVE NOT DEMONSTRATED THAT THEY SUFFERED IRREPARABLE HARM**

A preliminary injunction order is a drastic remedy that New York courts are loathe to grant in the absence of demonstration by the moving party that a real and immediate threat of irreparable injury exists and that it cannot be remedied by an award of damages. *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983) (demonstration of irreparable harm is the "most important prerequisite for the issuance of a preliminary injunction." ); *Payment Alliance Int'l, Inc. v. Ferrreira*, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007) ("To make this showing, a Plaintiff must demonstrate that absent a preliminary injunction he will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be redressed through a monetary award.")(internal quotations omitted)*; Khan v State Univ. of New York Health Sc. Ctr. at Brooklyn*, 271 A.D.2d 656, 657 (2d Dep't 2000) (when claims "are wholly speculative and conclusory," they "are insufficient to satisfy the burden of demonstrating irreparable injury") The moving party's burden is a difficult one to achieve, when the injunction sought is to enforce an anti-competitive restrictive covenant that, if granted, will substantially interfere with an individual's ability to earn a livelihood and harm the swimmers who choose to train with Wagner.  Defendants come up empty in this regard.

Defendants have not demonstrated that they have sustained any injury in connection with the allegedly "brazenly stolen" copied computer files and emails.  Wagner does not believe that he copied the computer files and emails.  Even if he had copied the files and emails in question, he turned them over at the request of Defendants, and there is no proof that he ever viewed the files, used them for any purpose, or that they remain in his possession.  Defendants rely on inadmissible hearsay in the form of a purported "preliminary verbal report from a forensic expert" to support their

3

claims that Wagner wrongfully coped the computer files and emails in question. However, Defendants have neither identified the forensic expert, stated the expert's methodology, nor submitted a copy of any written report from the expert. Defendants do not provide the chain of custody of the flash drives after they were returned by Wagner. Defendants' conclusory allegations are insufficient to support the relief sought.

Defendants have also failed to demonstrate imminent irreparable harm in connection with Wagner's move to the NY Sharks, or that any such harm cannot be remedied by an award of monetary damages. In their application, Defendants claim that they have lost six (6) members who have requested tuition refunds since Wagner's departure on April 17, 2012. (Carlucci Aff. at ¶ 98.) Defendants provide no evidence to demonstrate that they actually provided the refunds sought, that the Club members did not leave the Club due to dissatisfaction with the Club, or that these swimmers left to go to the NY Sharks. Even if they had, six swimmers out of approximately 340 members is an incredibly small number of departures, and one that can be remedied by monetary damages in the unlikely outcome that the restrictive covenant is adjudicated enforceable.

Additionally, Defendants have provided no evidence to suggest a mass departure from the Club resulting from Wagner's move to the NY Sharks. The largest number of Condors Club members are younger children primarily coached by Jim Wargo. The Club has approximately 15 other coaches, including the Club President, Defendant JP Carlucci, and Christina Krautz, the Club's Weschester Head Coach. All have strong relationships with the swimmers they coach. This is in addition to Robert Carlucci who, by his own words, built the club and has over 25 years of coaching experience, and has strong relationships with the members and the community in general. Wagner was primarily involved with a small group of 50 senior swimmers. Wagner's interaction with other

Club members was limited or non-existent. There is no evidence which swimmers asked for refunds from the Condors Club. Six, or even fifty, is a small number of swimmers. For purposes of this application, any such departures can be remedied through money damages if Defendants are ultimately successful on the merits. There is simply no evidence to demonstrate imminent irreparable harm to support a grant of preliminary injunction.

### POINT III.    DEFENDANTS CANNOT DEMONSTRATE THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS

#### A.    The Public Interest Weighs Heavily Against Granting Preliminary Injunctive Relief and Enjoining Wagner from Coaching Another Swim Club

Non-compete clauses in employment contracts are not favored and will only be enforced to the extent reasonable and necessary to protect valid business interests. *Morris v. Schroder Capital Mgmt. Int'l*, 7 N.Y.3d 616 (2006); *BDO Seidman v Hirshberg*, 93 N.Y.2d 382 (1999); *Post v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84 (1979); *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 187 (S.D.N.Y. 2011). A non-compete agreement is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d at 187 (*citing BDO Seidman*, 93 N.Y. at 388-89); *American Broadcasting Cos. v. Wolf*, 52 N.Y.2d 394, 403 (1991); *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499(1977); *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976). In this case, Defendants' application to enforce the non-compete contained in the Employment Agreement fails for a number of reasons.

Condors is a private, not-for-profit swim club that provides swimming instruction and training to children ages 8 to 18. This creates a unique set of circumstances for this Court when

evaluating the propriety of injunctive relief. A review of the relevant case law on injunctive relief in the context of enforcing non-compete agreements involving not-for-profit organizations outside of the physician context reveals few, if any, relevant decisions. The decision in *Hope Foundation, Inc. v. Edwards*, 2006 U.S. Dist. LEXIS 84244 (S.D. Ind. Apr. 12, 2006), a case involving injunctive relief to enforce a non-compete agreement in the not-for-profit arena is, however, instructive.

The Court in *Hope* wrestled with a similar scenario. The plaintiff in *Hope*, was a not-for-profit organization whose mission was to educate educators in strategies for improving schools. The defendant, Edwards was a well-regarded educator who provided consulting services and was a spokesperson for the plaintiff. The defendant started his own competing educational company and took on school clients who had previously worked with plaintiff. In *Hope*, the public interest referred to the school districts, school administrators, teachers and students who benefitted from Edwards' services. The Court noted that the "public interest [] plays a relatively unusual role, and one that weighs against injunctive relief." 2006 U.S. Dist. LEXIS 84244, at * 49. The Court then concluded that "injunctive relief to deny those customers their choice of service providers would be contrary to the public interest." *Id.* at *50. The Court in *Hope*, recognizing the unique nature of non-profit organizations, further reasoned that should a breach be found, "the public interest in this case, unlike a typical private commercial dispute, weighs in favor of relying on a later damages remedy as between [the parties to the contract] without interfering with the customers' programs. . . ." *Id.* at *50-51.

The same rationale applies here. The public interest in this case weighs heavily against the issuance of an order enjoining Wagner from coaching for any private swim team within the territory described in his Employment Agreement. Preventing Wagner from coaching at another private

6

swim club only serves to harm those young adult swimmers (and their parents), who have been training with Wagner and want to continue to train with Wagner. They should not be punished because of a dispute between the Condors Club and Wagner.

Since the termination of his employment by the Condors Club, Wagner has not solicited a single swimmer or parent to entice a Condor Club swimmer to train with him. Instead, approximately 20 swimmers and/or their parents have actively sought him out to continue their training. (Wagner Aff. at ¶ 20.) And with good reason. Many of his students are currently training for upcoming national events, including the United States Olympic Trials which is a once-in-a-lifetime opportunity. For example, One of the swimmers is an adult, who has already qualified for the Olympic Trials in 50 and 100 meters freestyle. The 2012 Olympic trials are held in June and July. Two of the swimmers are within one second of qualifying for the women's Olympic trials for 100 meter backstroke and breaststroke. A qualification meet is being held May 8, 2012 in Charlotte, N.C. Approximately 6 swimmers are hopeful of competing in the Junior National Olympic Meet and 3 swimmers are hopeful of competing in the Senior National Meet, both to be held in August, 2012. The swimmers have worked long and hard to reach the places they are in, for some a once in a lifetime opportunity, to compete at the highest level, the Olympics. Granting injunctive relief and disrupting years of training at this stage would do a tremendous disservice to these young swimmers. They, and any other swimmers who want to continue their training under Wagner, should have the absolute right to do so. *See NYSARC, Inc. v. Syed*, 192 Misc.2d 772, 775 (Sup. Ct. Chautauqua County 2002) (in a physician non-compete context, court noted that "[c]ertainly, those patients [who are being tugged between the competing parties] have a strong interest in choosing what physician will provide their medical care.").

USA Swimming, the governing body for the sport of swimming in the United States, recognizes the public interest in allowing swimmers to choose their own coach. Its Code of Conduct, which prohibits solicitation of swimmers from one club to another provides a specific carve out: a coach may recruit a swimmer to leave a club if "contact is initiated by the athlete, the athlete's parent or authorized representative."

### B. The Restrictive Covenant That Defendants Seek to Enforce Is Unreasonable as a Matter of Law Because it Is Greater than Needed to Protect the Condors Club's Legitimate Interests

The availability of recourse through USA Swimming undermines any argument by Defendants that the non-compete agreement is reasonably limited as necessary for the protection of Condors Club's legitimate interest. The Condors Club and Wagner are both members of, or affiliated with, USA Swimming. Wagner has been a member of USA Swimming as a coach for more than 30 years. As noted above, the USA Swimming Code of Conduct prohibits any coach of a swim club from "recruit[ing] or otherwise encourag[ing] an athlete who is already a member of a USA Swimming member club to leave that club." If Wagner violates this rule, he is subject to censure, probation, suspension, fine or expulsion from USA Swimming. ( Wagner Aff. at ¶19.) Wagner has not and will not do anything to jeopardize his standing within the organization, which has far more severe consequences than violating an agreement or an injunction. The USA Swimming Code of Conduct is more than sufficient to deter Wagner from engaging in the solicitation of Condors Club members that Defendants seek to enjoin. USA Swimming provides adequate recourse for the Condors Club to redress any improper solicitation it can demonstrate Wagner engages in, thereby eliminating the possibility of irreparable harm and the need for injunctive relief.

Additionally, the Condors Club maintains a competitive advantage in the marketplace over the NY Sharks Club with respect to its members, even with Wagner as its coach. The Condors Club exclusive use of the Olympic-sized pool at Felix Festa middle school in West Nyack, NY during the prime hours of 5:00 p.m. to 9:00 p.m. Monday through Friday when students are able to train. The Felix Festa pool is generally regarded as the top pool in Rockland County. The NY Sharks are bred to train at inferior pool located at Rockland County Community College. This is a tremendous draw for swimmers training for national meets, and one that the NY Sharks cannot provide. Because of this, many serious swimmers will likely choose the Condors Club over the NY Sharks.

For these reasons, Defendants cannot show that the restrictive covenant is no greater than that needed to protect its legitimate interests in its member swimmers. One could even argue that these two factors demonstrate lack of necessity for a restrictive covenant. Either way, the restrictive covenant that Defendants seek to enforce is unreasonable, and, their application should be denied.

### C. The Condors Club Cannot Enforce the Restrictive Covenants in the Employment Agreement Against Wagner Because it Materially Breached the Agreement

Under New York law, even a reasonable non-compete agreement is unenforceable if the employer has breached the employment agreement. *See Cornell v. T.V. Dev. Corp.*, 17 N.Y.2d 69, 75 (1966) (otherwise valid covenant against competition is unenforceable "when the party benefited was responsible for the breach of the contract containing the covenant"); *Elite Promotional Mktg., Inc. v. Stumacher*, 8 A.D.3d 525, 527 (2d Dep't 2004) (breach of contract by one party renders restrictive covenants unenforceable and frees the other party from the obligations of the restrictive covenants); *DeCapua v Dine-a-Mate*, 292 A.D.2d 489 (4th Dept 2001); *Michael I. Weintraub, M.D., P.C. v. Schwartz*, 131 A.D.2d 663, 665-66, (2d Dep't 1987).

In this case, the Condors Club has materially breached Wager's Employment Agreement in a number of ways:

- The Condors Club failed to pay Plaintiff a Competitive Performance bonus for the years 2011 and 2012 in breach of Section 3.6 of the Agreement ;

- The Condors Club unlawfully deducted approximately $1,000 from his contractually agreed-upon wages in breach of Section 3.1 of the Agreement and state law;

- The Condors Club failed to pay Plaintiff his salary on a bi-weekly basis as required by Section 3.1. of the Agreement and state law;

- The Condors Club intentionally left Wagner out of its contract negotiations with Jim Wargo as Head Age Group & Asst. Senior Coach, in violation of Section 1.1a of the Agreement; and

- The Condors Club failed to pay Wagner six (6) months of salary upon the termination of his employment without cause as provided for in Section 9.3 of the Agreement.

Having materially breached the Employment Agreement, the Condors Club cannot turn around and enforce the restrictive covenants against Wagner preventing him from obtaining a position as a swimming coach at a different swim club.

### D. The Condors Club Cannot Enforce the Restrictive Covenant Against Wagner Because it Terminated His Employment Without Cause

New York courts will "not enforce a non-competition provision in an employment agreement where the former employee was involuntarily terminated." *SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*, 867 F. Supp. 155, 158 (S.D.N.Y. 1994); *see Post*, 48 N.Y.2d at 89. "An essential aspect [of enforceable restraints on employee mobility] is the employer's continued willingness to employ the party covenanting not to compete." *SIFCO*, 867 F. Supp. at 158 (*quoting Post*, 48 N.Y.2d at 89).

Here, the relevant facts demonstrate that Wagner's employment was terminated by the

Condors Club without cause. Wagner denies copying any computer files that he was not permitted to copy in his capacity as Head Coach of the Condors Club. (Wagner Aff. at ¶ 2.) Defendants have failed to demonstrate that he did so. It was Wagner's usual and customary practice to openly and notoriously keep a flash drive in the computer that was at his desk at the offices of the Condors Club. (Wagner Aff. at ¶ 3.) Wagner took the flash drive with him when he left the office so that he could work on his home computer. (*Id.*) This practice was undoubtedly observed by the individual Defendants, who both frequented the Club's offices and saw him working on the computer at his desk. (*Id.*) Wagner was never told by Defendants that he could not copy Club-related files. (*Id.*)

On April 8, 2012, Wagner was in the club's offices. He had lawful access to the Club's office and it was not unusual for him to be at the office on a Sunday. (Wagner Aff. at ¶ 4.) With the assistance of another Club swim coach, Jim Wargo, Wagner had archived his emails from previous years, during the weeks prior to April 8, 2012. (Wagner Aff. at ¶ 5.) On April 8, Wagner attempted to copy these archived emails onto a new flash drive because the voluminous data could not be copied onto the flash drive that he normally toted back and forth. (*Id.*)

Wagner thought that he had successfully copied his archived emails and other Club-related files onto the new flash drive. (Wagner Aff. at ¶ 6.) When he returned home and inserted the flash drive, however, he could not find his emails or the other Club-related files that he thought he had copied. (*Id.*) Later that day, Defendant JP Carlucci, titular President of the Condors Club, called Wagner to ask if he had been to the Club. (Wagner Aff. at ¶ 7.) Wagner responded that he had. JP Carlucci asked Wagner if he had copied computer files. Wagner replied that he had. JP Carlucci asked Wagner to return the flash drives and Wagner said that he would, and did so when he saw him. (*Id.*)

11

Defendants accused Wagner of copying non-Club related files that were the personal files of Defendant Robert Carlucci. (Wagner Aff. at ¶ 8.) Wagner denied that he had copied non-Club related files. (*Id.*) Wagner did not view any of Robert Carlucci's personal files and, to his knowledge, he did not have access to any of Robert Carlucci's personal files through the Club computer that was made available for his use at his desk. (*Id.*) During the three and a half years Wagner had been Head Coach and had used the Club's computer at his desk, he does not recall ever seeing or opening a personal file of Robert Carlucci, his insurance company, or of the Clarkson Central School District, in which Robert Carlucci is a member of the School Board. (*Id.*) Wagner can only presume that Robert Carlucci took reasonable precautions to make sure that Wagner, the other two Club coaches with desks and club computers in the Club's office, and the office manager with a desk and Club computer did not have access to Robert Carlucci's personal, business or School District computer files. (*Id.*)

Wagner believes that the only files copied were in the C drive of his Club computer. (Wagner Aff. at ¶ 9.) Wagner's understanding (albeit limited) is that the only computer files stored on the C drive are the Club-related files that were created by him, sent to him, or were loaded onto the C drive. (*Id.*) Wagner does not know of any Club-related business that would account for Robert Carlucci's emails or other files to be on the C drive. (*Id.*) To the contrary, it is Wagner's understanding that since Robert Carlucci has been on the School Board, as of in or about Spring 2010, Robert Carlucci was required to divorce himself from Club business because of a conflict of interest that existed between his role as a School Board member and his role as the person that has run the club since its founding. (*Id.*)

It is sharply disputed by Wagner that Defendants' had any reasonable basis to accuse him

12

of intentionally copying Robert Carlucci's personal files and terminating his employment with cause. Wagner contends that the alleged copying of Robert Carlucci's personal files is a red herring. While Defendants allege their allegation is based on the analysis of a forensic computer expert, they have never given a name to their expert, set forth the methodology used by their expert, or produced a written report of the expert's findings. The entire allegation is based on inadmissible hearsay evidence. The evidence is far stronger that the alleged, but unproven copying of personal files, is a pretext. It was only after Plaintiff gave notice that Defendants had breached his employment agreement and federal and state wage and hour laws and not renew the existing agreement that Defendants terminated his employment. Regardless of whether this Court ultimately concludes that Wagner's employment was terminated for cause, the presence of such sharply disputed facts require denial of Defendants' motion for preliminary injunction. *See Charette*, *supra*, 159 F.3d 749; *Merrill Lynch Realty Assocs., Inc.*, *supra*, 140 A.D.2d 589; *Advanced Digital Sec. Solutions, Inc.*, *supra*, 53 A.D.3d 612; *County of Westchester*, *supra*, 32 A.D.3d 979.

## CONCLUSION

For the foregoing reasons, Plaintiff Donald Wagner respectfully requests that the Court deny Defendants' application for a temporary restraining order and motion for a preliminary injunction in its entirety, together with such relief as may be just and proper.

Dated: White Plains, New York　　　　　　　　　Respectfully submitted,
　　　　April 24, 2012

**SAPIR & FRUMKIN LLP**


By:　/s/ Donald L. Sapir
　　　Donald L. Sapir (DS 2724)
　　　Howard Schragin (HS 2597)
　　　399 Knollwood Road, Suite 310
　　　White Plains, New York 10603
　　　(914) 328-0366
　　　*Attorneys for Plaintiff*

F:\APPLICAT\WP\Wagner\Litigation\TRO and Preliminary Injunction\Memo of Law in  Opposition to Motion for Preliminary Injunction.4.24.12.wpd\rlh

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2012, PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPLICATION FOR A RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt including:

>John E. Finnegan, Esq.
>Montalbano, Condon & Frank, P.C.
>67 North Main Street - Third Floor
>New City, New York 10956
>*Attorneys for Defendants*

Parties may access this filing through the Court's electronic filing system

                                              /s/ Rachel L. Horton
                                              Rachel L. Horton